**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2310-24

CHARLES REDMOND,

    Plaintiff-Appellant,

v.

BDO USA, LLP and
HEIDE M. MOELLER,

    Defendants-Respondents.

_____

Argued May 12, 2026 – Decided August 14, 2026

Before Judges Sumners and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1684-22.

Trevor M. Fuller (The Fuller Law Firm, PC) of the North Carolina, New York, and the District of Columbia bars, admitted pro hac vice, argued the cause for appellant (Zemel Law LLC, and Trevor M. Fuller, attorneys; Daniel Zemel and Nicholas Linker, of counsel and on the briefs; Trevor M. Fuller, on the briefs).

Julie McConnell (Dechert LLP) of the District of Columbia bar, admitted pro hac vice, argued the cause

for respondents (Stephania C. Sanon (Dechert LLP) and Julie McConnell, attorneys; Stephania C. Sanon, on the brief).

PER CURIAM

In this employment discrimination case alleging violation of the common law and New Jersey and Connecticut statutes, plaintiff Charles Redmond appeals trial court orders: (1) dismissing all claims against defendant Heide Moeller for lack of personal jurisdiction; and (2) granting defendant BDO USA, LLP's summary judgment motion dismissing all claims with prejudice because it found that New Jersey did not have a substantial interest in the matter and that the common law claims were subsumed by the statutory ones. We affirm the dismissal of the New Jersey and Connecticut statutory claims but reverse the dismissal of the New Jersey and Connecticut common law claims and remand them for further prosecution as to BDO and Moeller.

I.

A. Redmond's Employment at BDO

In January 2018, Redmond, who is Black, was hired by BDO as a Senior Tax Accountant for the Corporate Tax Services Group at its Stamford, Connecticut office. A New Jersey resident since at least 2018, Redmond rented an apartment in Connecticut during his employment at BDO.

BDO is incorporated in Virginia as a limited liability partnership (LLP), with its headquarters and principal place of business in Illinois. Its core tax services team is subdivided into six regions. Redmond's Stamford office was part of BDO's northeast region with offices in Boston, Long Island, New York City, and Woodbridge, New Jersey.

Between 2018 and 2019, Redmond twice received a "Very Successful" rating from his superiors. However, his evaluation changed after Moeller, who is Caucasian, became managing partner at the Stamford office in November 2019. Redmond's December 2019 performance review stated that he "sometimes doesn't want to take feedback from supervisors," and that Moeller was "shocked at the quality of [his] work for an Experienced Senior [Tax Accountant]."

In March 2020, Redmond began working remotely due to the COVID-19 pandemic for the remainder of his employment with BDO, living between New Jersey and Connecticut. Shortly thereafter, BDO reconsidered its pandemic-related cost-cutting measure of terminating Redmond and thirty-one other employees viewed as underperforming. Instead, on April 20, according to BDO's East Tax Managing Principal Mathew DeMong, Redmond and the other purportedly underperforming employees were placed on a performance improvement plan (PIP) "to offer them another opportunity to succeed at BDO,

in consideration of the hardships imposed by the . . . pandemic." Moeller sent Redmond a PIP plan outlining areas for his improvement on April 20. Redmond responded to BDO's Human Resources Department, alleging that the PIP was in retaliation for his March 20 Human Resources complaint alleging Moeller harassed him, racially discriminated against him, and created a hostile working environment. BDO, however, ultimately terminated Redmond on July 7, based on his alleged continued performance issues.

B. Redmond's Lawsuit & Motion Practice

In December 2020, Redmond filed a complaint against BDO with Connecticut's Commission on Human Rights and Opportunities (CHRO), alleging race discrimination and retaliation. The CHRO issued a release of jurisdiction on May 10, 2022, indicating that a lawsuit must be brought within ninety days of receiving the release.

Redmond subsequently filed a Law Division complaint in Passaic County on July 7, and served defendants on September 19. The complaint alleged: (1) violations of the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. §§ 46a-51 to -104, and the New Jersey Law Against Discrimination (NJLAD), N.J.S.A. 10:5-1 to -50; (2) wrongful discharge in violation of public policy under New Jersey and Connecticut common law; (3) tortious interference with contractual relations; and (4) tortious interference with business relations.

4

Defendants were served the lawsuit 132 days after the CHRO released Redmond's complaint.

In December 2022, Moeller moved to dismiss for lack of personal jurisdiction; BDO moved to dismiss the tortious interference claims for failure to state a claim, and Redmond cross-moved to obtain jurisdictional discovery and to amend his complaint. The court granted Redmond's motions on January 6, 2023. Almost two months later, Redmond filed an amended complaint withdrawing the tortious interference claims.

On September 26, the court granted Moeller's motion to dismiss for lack of personal jurisdiction because she lived in Connecticut and all relevant employment actions against Redmond occurred in Connecticut. The court emphasized that "[d]espite a comprehensive five-month jurisdictional discovery process, [Redmond] . . . failed to adduce any facts demonstrating . . . Moeller has sufficient 'continuous and substantial' contacts with New Jersey." The court found unconvincing Redmond's argument that personal jurisdiction over Moeller was proper because she was an agent of BDO, which is subject to the court's personal jurisdiction due to its Woodbridge office. The court rejected Redmond's contention that Miller v. McMann, 89 F. Supp. 2d 564, 568 (D.N.J. 2000) and Star Video Ent., L.P. v. Video U.S.A. Assocs., L.P., 253 N.J. Super. 216 (App. Div. 1992) supported personal jurisdiction over Moeller. The court

reasoned that, unlike those cases, Moeller "had nothing to do with . . . the Woodbridge . . . office," and "New Jersey's nexus to an interest in the dispositive events that occurred in Connecticut is virtually nonexistent." Thus, the court found it would violate "'traditional notions of fair play and substantial justice,'" Int'l Shoe Co., v. Washington, 326 U.S. 310, 320 (1945), to hold that "a partner in an LLP should be subject to general jurisdiction without more in every state where any partner in the LLP does business."

After further discovery, BDO moved for summary judgment dismissal of the statutory and common law claims. A different trial court granted the motion on February 18, 2025, setting forth its reasons in a bench decision. The court dismissed the NJLAD claims based on its determination that Redmond's claims arose from actions in Connecticut. Relying on Buccilli v. Timby, Brown & Timby, 283 N.J. Super. 6, 9 (App. Div. 1995), the court held that "merely living in [New Jersey] does not automatically entitle a plaintiff to the benefits of the [NJLAD] when the alleged misconduct took place out of state." It reasoned that under P.V. ex rel. T.V. v. Camp Jaycee, 197 N.J. 132, 143 (2008), a conflict of laws analysis was required, and the first step was to determine whether an actual conflict exists between the respective state laws.

The court found that a conflict existed based on Calabotta v. Phibro Animal Health Corp., 460 N.J. Super. 38, 54 (App. Div. 2019), as application of

"CFEPA over [NJLAD] [would] result in the dismissal of the claim on statute of limitations ground[s]." Per Calabotta, the court applied sections 145 and 146 of the Restatement (Second) of Conflict of Laws[1] (A.L.I. 1988) (Restatement) factors, determining that Connecticut had the most significant relationship to the case because it is where the alleged injuries and conduct occurred and therefore New Jersey did not have a substantial interest.

In dismissing the CFEPA claims, the court agreed with BDO that its statute of limitations argument was not waived by failing to raise it for the first time on summary judgment. Relying on Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 500 (2006), the court ruled that "[a] statute of limitations defense need not be raised in the initial [filings]." The court also agreed with BDO that Redmond failed to timely litigate his CFEPA claims. It found that Connecticut law required Redmond to bring the action "not later than [ninety] days after the date of receipt of the release from the [CHRO]." Conn. Gen. Stat. § 46a-101(e).

The court cited Sokolovsky v. Mulholland, which held "[i]t is bedrock principle that, 'in Connecticut, an action is commenced not when the writ is returned but when it is served upon the defendant.'" 277 A.3d 138, 148 (2022) (internal quotation marks and citation omitted). Defendants were served 132

---

[1] The factors will be discussed in detail below.

days after the CHRO released Redmond's complaint, which was beyond the ninety-day limitation period.[2]  The court rejected Redmond's contention that "Connecticut's timing rule that deems a motion commence[d] when notice is served . . . is procedural in nature" and that the forum state should "apply[] its own procedural rules."  Our state, the forum state, requires that an action commences when it is filed.

The court then conducted a conflict of law analysis to determine whether New Jersey or Connecticut's statute of limitations apply, citing McCarrell v. Hoffmann-La Roche, Inc., 227 N.J. 569, 592 (2017) (adopting section 142 of the Restatement as the choice-of-law rule for statutes of limitations). Summarizing section 142, as recognized by McCarrell, 227 N.J. at 596, the court explained that it cannot apply the forum's statute of limitations "when the forum state has no interest in the litigation and a claim is barred by another state's statute of limitations."

Given its determination that New Jersey did not have a significant interest in the matter, the court decided whether Redmond's claim would be barred by applying Connecticut's statute of limitations.  The court citing Heavner v. Uniroyal, 63 N.J. 130, 136 (1973), recognized that "utiliz[ing] the New Jersey

---

[2]  The CHRO issued a release of jurisdiction on May 10, 2022, and defendants were served Redmond's complaint on September 19, 2022.

8

rule, [rather than the Connecticut rule,] to in essence extend the statute of limitations period beyond its statutory bounds under the guise of procedure would be . . . to ignore the understanding [that] statute of limitations . . . are not strictly procedural." The court acknowledged such a result would foster forum shopping, which our Supreme Court discourages. See McCarrell, 227 N.J at 596 (quoting Restatement § 142 cmt. g (A.L.I. 1988)) ("'[E]gregious examples of forum shopping' will be discouraged when a forum state that has no interest in the litigation declines to apply its favorable statute of limitations.").

Regarding the New Jersey and Connecticut common law wrongful discharge claims, the trial court dismissed them because under both states' law, they are subsumed under the NJLAD and CFEPA. Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 90 (App. Div. 2001); Sempey v. Stamford Hosp., 184 A.3d 761, 767 n.6 (2018).

This appeal followed.

II.

We first address the trial court's order granting Moeller's motion to dismiss all claims against her because New Jersey does not have general or specific jurisdiction over her. Redmond contends the court erred, arguing there is specific and general jurisdiction over Moeller due to her supervision of him

9

and her position as a BDO partner. We conclude there is only general personal jurisdiction over Moeller due to her BDO partnership interest.

Determining in personam jurisdiction is a mixed question of law and fact. Citibank, N.A. v. Est. of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996). Rule 4:4-4(b)(1) allows for the exercise of personal jurisdiction over nonresident defendants "consistent with due process of law." Thus, our courts' jurisdictional reach over nonresidents extends as far as federal standards of due process allow. Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971); Reliance Nat'l Ins. in Liquidation v. Dana Transp., Inc., 376 N.J. Super. 537, 543 (App. Div. 2005). The federal standard permits the exertion of personal jurisdiction over a nonresident that had "minimum contacts" with the forum "such that [maintaining] . . . the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co., 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 563 (1940)). In "some circumstances," minimum contacts may be established by "'the combined effect of several contacts with the state, no one of which is sufficient.'" Zahl v. Eastland, 465 N.J. Super. 79, 98 (App. Div. 2020) (quoting Bayway Refining Co. v. State Utils., Inc., 333 N.J. Super. 420, 433 (App. Div. 2000)). "The minimum contacts requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Doe 70 v. Diocese of Metuchen, 477 N.J.

10

Super. 270, 281 (App. Div. 2023) (internal quotations omitted) (quoting Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989)).

Consistent with federal jurisprudence, New Jersey recognizes "two forms of personal jurisdiction over nonresident defendants:  general jurisdiction and specific jurisdiction."  D.T. v. Archdiocese of Phila., 260 N.J. 27, 42 (2025) (citing Daimler AG v. Bauman, 571 U.S. 117, 127 (2014); Lebel, 115 N.J. at 322).

"General jurisdiction requires that the defendant's affiliations with the State be so continuous and systematic as to render the defendant essentially at home in the forum State."  D.T., 260 N.J. at 42 (internal quotations omitted) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).  "Specific jurisdiction 'covers defendants less intimately connected with a State, but only as to a narrower class of claims.'"  Id. at 43 (quoting Ford Motor Co. v. Mont. Eight Jud. Dist. Ct., 592 U.S. 351, 359 (2021)).  "The minimum contacts required to establish specific jurisdiction" are referred to more often by the term "purposeful availment."  Ibid. (internal quotations omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)).  To invoke specific jurisdiction, a defendant must "take 'some act by which [they] purposefully avail[] [themselves] of the privilege of conducting activities within the forum State.'"  Ibid. (quoting Ford Motor Co., 592 U.S. at 359).  This requirement

11

exists to prevent an out-of-state defendant from being "haled into court based on 'random, fortuitous, or attenuated contacts or as a result of the unilateral activity of some other party.'" Baanyan Software Servs., Inc. v. Kuncha, 433 N.J. Super. 466, 475 (App. Div. 2013) (quoting Waste Mgmt., Inc. v. Admirals Ins., 138 N.J. 106, 121 (1994)). In other words, "[t]he defendant's contacts with the forum state must be such that [they] should reasonably anticipate being haled into court there." Patel v. Karnavati Am., LLC, 437 N.J. Super. 415, 432–33 (App. Div. 2014) (first alteration in original) (quoting Charles Gendler & Co., v. Telecom Equip. Corp., 102 N.J. 460, 470 (1986)). Importantly, for specific jurisdiction, the lawsuit "must arise out of or relate to the defendant's contacts with the forum." Doe 70, 477 N.J. Super. at 281 (internal quotation marks and alterations omitted) (quoting Jardim v. Overley, 461 N.J. Super. 367, 376 (App. Div. 2019)).

A. Specific Jurisdiction

We conclude the trial court correctly found no basis for specific personal jurisdiction over Moeller arising from her acts towards Redmond in New Jersey. See Doe, 477 N.J. Super. at 281. The court determined her contacts with New Jersey were incidental: communications with New Jersey branch managers during conference calls with the entire Northeast region; preparation and filing of New Jersey tax returns for BDO clients; providing statements of work

12

indicating she can prepare and file New Jersey taxes; and, as a BDO partner, deriving a portion of the partnership's income in every state where it conducts business, requiring her to file taxes in New Jersey and over thirty other states. Moreover, the court found Redmond's allegations of her discriminatory conduct—including his January 10, 2020 performance review with Moeller; her confrontation of Redmond following an altercation between him and another employee; the complaint he filed with human resources after the confrontation; the PIP plans he was placed on after his complaint; Moellers general treatment of him; and his eventual termination—all took place outside of New Jersey. We find no reason to upset this determination considering our deferential standard regarding the trial court's factual findings, which "are supported by substantial, credible evidence in the record," YA Glob. Inv., L.P. v. Cliff, 419 N.J. Super. 1, 8 (App. Div. 2011), and our de novo review of the court's legal findings, Zahl, 465 N.J. Super. at 92. On the other hand, the court incorrectly found there was no basis for personal jurisdiction arising from her position as a BDO partner.

Initially, we agree with the trial court that there is no question that our courts have general jurisdiction over BDO based on its "territorial presence in the state." See D.T., 260 N.J. at 42. The Uniform Partnership Act (UPA), N.J.S.A. 42:1A-1 to -56, establishes that "[e]ach partner is an agent of the partnership for the purpose of its business." N.J.S.A. 42:1A-13. Yet, the UPA

also provides that "[a] partner is not personally liable, directly or indirectly, by way of contribution or otherwise," for "[a]n obligation of a partnership incurred while the partnership is a [LLP], whether arising in contract, tort, or otherwise." N.J.S.A. 42:1A-18(c). While the UPA does not explicitly address personal jurisdiction over the partnership, N.J.S.A. 42:1A-18(c) provides that partners in LLPs are not automatically liable for a partnership's obligation "solely by reason of being . . . a partner." N.J.S.A. 42:1A-18(c). However, partners may still be individually liable based on other contributing factors. We have held "[i]t is elementary that each partner is the agent of the other and of the partnership. This common law principle was adopted by the [UPA]." First Am. Title Ins. Co. v. Lawson, 351 N.J. Super. 407, 425 (App. Div. 2002) (quoting Eule v. Eule Motor Sales, 34 N.J. 537, 542 (1961)) rev'd on other grounds 177 N.J. 125 (2003).

Contrary to the trial court and Moeller's contentions, we find guidance in Miller for invoking personal jurisdiction over her. In Miller, the plaintiff alleged that "she was defrauded out of a half-interest in certain real property located in Maryland." 89 F. Supp. 2d at 565. She sued the Maryland law firm Jodlbauer, Lidums & Scibinico, P.A. and its individual partners Jodlbauer, Lidums, and Scibinico. Ibid. The district court found it had specific jurisdiction over Jodlbauer because he: (1) instructed a real estate agent to travel to New Jersey;

14

(2) instructed the real estate agent to get the "plaintiff's signature on the quitclaim deed"; (3) gave the real estate agent the quitclaim deed; (4) told the real estate agent to "inform [the] plaintiff that [she] had no monetary interest in the property"; and (5) spoke with the plaintiff on the phone while the real estate agent was at her home. Id. at 567. The district court held it was well-settled law that jurisdiction over one agent of the partnership conferred jurisdiction over the partnership, and, thus, it had personal jurisdiction over the firm. Id. at 568 (citing Citibank, N.A., 290 N.J. Super. at 530–31).

The district court held that having jurisdiction over the law firm conferred individual personal jurisdiction over partners Lidums and Scibinico. Id. at 568. The court noted that there was no New Jersey precedent addressing this issue. Ibid. But since New Jersey law provides that a partner is an agent of the partnership and the other partners, Miller held personal jurisdiction over Lidums and Scibinico was proper "through the contacts of Jodlbauer with the state." Ibid. The district court's reasoning was supported by reviewing relevant decisions by other courts throughout the country. Id. at 568–569. See, e.g., Jackson Nat'l Life Ins. v. Greycliff Partners, Ltd., 2 F. Supp. 2d 1164, 1167 (E.D. Wis. 1998) (finding that "the existence of personal jurisdiction over a partnership also establishes personal jurisdiction over the partners" because of the "crucial distinction" in New Jersey law that one partner is an "agent for the

15

other partners"); Durkin v. Shea, 957 F. Supp. 1360, 1366–67 (S.D.N.Y. 1997) (imputing the activities of partners with established personal jurisdiction onto other partners without a connection to the forum because "under New York law, a partner is, in fact, an agent of his fellow partners, as well as of the partnership").

The trial court held and defendants argue that when personal jurisdiction is imputed to a nonresident partner by virtue of the partnership's established jurisdiction in the forum, it is limited to instances of specific jurisdiction where the case arises from conduct in the forum. The trial court applied this reasoning to distinguish Miller from the present case. However, reliance on this factor is overstated. While the Miller court held it had specific jurisdiction over Jodlbauer due to his fraudulent conduct connected to New Jersey, its reasoning to impute personal jurisdiction over the other two partners was based on New Jersey agency law principles that "[j]urisdiction over one partner confers jurisdiction over the partnership" and that "a partner is an agent both of the partnership and the other partners." Id. at 568. The court stated "[i]n light of Jodlbauer being an agent of the partnership and his other partners" it was proper to impute jurisdiction onto the two other partners through Jodlbauer's contacts in the state. Ibid.

16

We find no merit in defendants' argument distinguishing Miller on the basis that the partnership there was a general partnership, whereas here BDO is an LLP, making one partner's personal liability not automatically imputed to another "solely by reason of being or so acting as a partner." N.J.S.A. 42:1A-18. The Miller and Jackson courts distinguished Sher v. Johnson, 911 F.2d 1357, 1366 (9th Cir. 1990), where the Ninth Circuit held that the court had personal jurisdiction over a law firm but not its individual partners. The circuit court interpreted the general law in California that "a partner is an agent of the partnership when carrying on the business of the partnership in the usual way" to mean that "while each partner is generally an agent of the partnership for the purpose of its business, [they] [are] not ordinarily an agent of [their] partners." Id. at 1362, 1366 (emphasis in original). The Circuit court also relied heavily on the United States Supreme Court's holding in Rush v. Savchuk, 444 U.S. 320, 332 (1980), which stated that "[t]he requirements of International Shoe . . . must be met as to each defendant over whom a state court exercises jurisdiction." Id. at 1365.

While we agree with the Ninth Circuit that liability and jurisdiction are distinct inquiries—as the former concerns "the relationship between the [parties]" while the latter "depends only upon each defendant's relationship with the forum" Sher, 911 F.2d at 1365, we nonetheless conclude, as the Durkin court

17

did, that "general principles of agency law can appropriately inform the jurisdictional inquiry," Durkin, 957 F. Supp. at 1367. While partnerships, by virtue of the partners' reciprocal responsibility, carry certain liability risks, they also provide profit-sharing benefits, which Moeller benefited from as some of the partnership's—and by extension—her income, is derived from New Jersey business. By being a partner, Moeller must understand that there is an agency relationship between her, BDO, and the other partners, which differentiates a partnership from a corporation. Moreover, maintaining the suit in New Jersey does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co., 326 U.S. at 316 (internal quotations and citation omitted).

To determine whether jurisdiction satisfies traditional notions of fair play and substantial justice courts "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Doe 70, 477 N.J. Super. at 282 (internal quotations omitted) (quoting Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 113 (1987)). Defendants have failed to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Rudzewicz, 471 U.S. at 477. There is no evidence that Moeller is unable to travel to New Jersey or is unable to present evidence only available in Connecticut. Moreover, Redmond resides in New

A-2310-24

Jersey, and this state has an interest in protecting its residents from discrimination.

Accordingly, the court has personal jurisdiction over Moeller arising from her partnership in BDO.

III.

We now turn to the trial court's summary judgment dismissal of Redmond's statutory and common law claims.

We review a motion court's summary judgment decision de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024). Applying the same standard as the motion court, we consider "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). "If there is no genuine issue of material fact," an appellate court must then "'decide whether the trial court correctly interpreted the law.'" DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting

19

Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).  No "'special deference'" is accorded to the "'trial court's interpretation of the law and the legal consequences that flow from established facts.'"  Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414–15 (2018) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).  Notably, "whether a statute of limitations applies in a given case is ordinarily a legal matter and 'traditionally within the province of the [trial] court.'"  Baez v. Paulo, 453 N.J. Super. 422, 436 (App. Div. 2018) (quoting Lopez v. Swyer, 62 N.J. 267, 274 (1973)).

Applying these summary judgment principles, we address the dismissal of Redmond's claims.

A.  NJLAD Claims

Redmond argues the trial court misapplied the law in granting summary judgment dismissal of his NJLAD claims.[3]  Specifically, he asserts the NJLAD protects him given that he is a New Jersey resident and this court's holding in Calabotta that we "detect[ed] no expression of legislative intent to limit the statute's protection to job applicants who live in New Jersey, or to those

---

[3]  As mentioned above, although the summary judgment decision was directed only to BDO, because we reverse the dismissal of Moeller for lack of personal jurisdiction, Redmond's summary judgment arguments are also imputed to her. Accordingly, references to defendants include both BDO and Moeller.

20

employees who perform all of their employment functions in New Jersey."  460 N.J. Super. at 64.  He argues that even though Buccilli "held that where a person works can determine whether the NJLAD applies," Calabotta made clear that "Buccilli should not be misread to impose a bright-line choice-of-law principle that all employment discrimination claims must be governed by the law of the state where a plaintiff exclusively or principally worked."  460 N.J. Super. at 69.  Due to his remote work, Redmond argues BDO "may be regarded as a New Jersey employer for purposes of applying the NJLAD."

Additionally, Redmond argues summary judgment should not have been granted because there is a genuine issue of material fact about whether he worked in New Jersey when defendants racially discriminated against him between March and July of 2020.  He further alleges that the court erred in concluding there is a substantive conflict between the NJLAD and the CFEPA, and to the extent that their respective statutes of limitations differ, it does not create a conflict because he complied with "the statute of limitations of New Jersey, the forum state, [which] applies," as well as Connecticut's time limitations.  We are unpersuaded by all these arguments.

We reason that, under Buccilli, Redmond's NJLAD claims do not apply, and summary judgment dismissal was proper.  In Buccilli, we held that "the damage claim of a New Jersey resident for her allegedly wrongful dismissal

21

from out-of-state employment is governed by the law of the state in which she was employed." 283 N.J. Super. at 10–11. We agreed with the trial court that "[o]nly Pennsylvania, not New Jersey, substantive law govern[ed]" because the "[p]laintiff's employment began and ended in Pennsylvania," which is where the misconduct allegedly occurred. Id. at 10. We concluded that "making the rights of each of several co-workers dependent on his or her state of residence would be an entirely unreasonable result" from the employer's perspective. Id. at 11.

Redmond correctly points out in Calabotta we cautioned that Buccilli did not establish "a bright-line choice-of-law principle that all employment discrimination claims must be governed by the law of the state where a plaintiff exclusively or principally worked." 460 N.J. Super. at 69. However, Calabotta acknowledged that the outcome in Buccilli was consistent with the multiple choice-of-law factors set forth in sections 145 and 146 of the Restatement but disapproved of the trial court's "dispositive reliance" because the "factual allegations" in Calabotta were "materially distinguishable from Buccilli." Ibid. For example, we stressed the facts in Buccilli differed from in Calabotta because: (1) Calabotta resided outside of New Jersey, and the defendant employer was headquartered in New Jersey whereas the defendant employer where Buccilli worked was in Pennsylvania and Buccilli resided in New Jersey, ibid.; (2) Calabotta "contend[ed] the discriminatory conduct by defendants

22

occurred in New Jersey, whereas in <u>Buccilli</u> the alleged discriminatory conduct took place in Pennsylvania." <u>Ibid.</u> Therefore, given "there was no nexus to New Jersey other than . . . Buccilli's residency in this State," the <u>Calabotta</u> court agreed that Pennsylvania law applied. <u>Id.</u> at 60–64.

Redmond's employment situation is essentially identical to that in <u>Buccilli</u>. BDO has an office in New Jersey but is headquartered and incorporated out of state. Like Buccilli, Redmond exclusively worked in Connecticut but lived in New Jersey. Moreover, Redmond only resided in New Jersey for part of his employment, primarily during the last five months of his two years of employment. Buccilli resided in New Jersey the entire time. These facts are clearly distinguishable from <u>Calabotta</u>, which focused on whether the NJLAD could apply extraterritorially to protect a nonresident plaintiff's failure-to-promote claim involving a job in New Jersey. The main distinguishing factor from <u>Buccilli</u> is that Redmond worked remotely during the pandemic, dividing his time between New Jersey and Connecticut. However, Redmond's remote work was based out of BDO's Connecticut office, a continuum of his pre-pandemic work, and the alleged discriminatory conduct took place entirely outside of New Jersey. In <u>Calabotta</u>, the application of the NJLAD turned on whether the alleged discriminatory conduct had a sufficient nexus to New Jersey. Contrary to <u>Calabotta</u>, the facts before us are indistinguishable from

Buccilli, whose holding we approved of in Calabotta.  Therefore, a choice-of-law analysis is not necessary.

Redmond's brief pandemic-related remote work fails to establish a nexus in New Jersey as we concluded in Calabotta, because there, the failure-to-promote claim was for a job in New Jersey, and Calabotta alleged the decision to not hire him took place in New Jersey.  Because Redmond was employed in Connecticut and the discriminatory conduct occurred outside of New Jersey the NJLAD does not cover his allegations.  Thus, summary judgment dismissal of his NJLAD claims was proper.

## B.  CFEPA Claims

Redmond contends the trial court misapplied the law by dismissing his CFEPA claims.  Initially, he argues defendants waived their statute of limitations defense regarding the filing of his CFEPA claims by raising it too late, waiting until they moved for summary judgment.  Under Fees v. Trow, 105 N.J. 330, 335 (1987), he contends a statute of limitations defense must be "affirmatively raised . . . in a timely manner, or it is deemed waived."  He also points to Rule 4:5-4, which provides that a responsive pleading should include the statute of limitations as an affirmative defense.

Alternatively, Redmond contends that his CFEPA claims were timely filed under both the NJLAD and CFEPA.  The CHRO released jurisdiction of his

24

CFEPA claims on May 10, 2022, advising Redmond that under Conn. Gen. Stat. § 46a-101(e), a CFEPA lawsuit must be brought within ninety days of receiving the release, i.e. by August 8, 2022. Redmond maintains that in New Jersey, in accordance with Rule 4:2-2, an action commences when a complaint is filed. He argues that under a choice of law analysis "the procedural law of the forum[—New Jersey—]applies even to causes of action governed by a different jurisdiction's substantive law." Du-Wel Prods., Inc. v. U.S. Fire Ins., 236 N.J. Super. 349, 362 (App. Div. 1989). Thus, he posits that, since his complaint was filed on July 7, 2022, before the August 8, 2022 deadline, it was timely under both Connecticut and New Jersey law.

1. Statute of Limitations Waiver

There is no legal support for Redmond's contention that defendants waived their defense that Redmond's CFEPA claims were untimely filed. Redmond's reliance on Fees is misplaced. There, our Supreme Court explicitly stated that since the defense "was neither pleaded in [the] defendant's answer nor raised in [the] defendant's motion for summary judgment," it was waived. Fees, 105 N.J. at 335. This implies raising the statute of limitations defense at summary judgment is timely. As such, the trial court correctly found that defendants' statute of limitations was not waived.

2. Timeliness of CFEPA claims

25

Our courts must apply section 142 of the Restatement when "choosing between one or another state's statute of limitations is outcome determinative." McCarrell, 227 N.J. at 584. Section 142 of the Restatement provides:

> Whether a claim will be maintained against the defense of the statute of limitations is determined under the principles stated in § 6.[4] In general, unless the exceptional circumstances of the case make such a result unreasonable:
>
> (1) The forum will apply its own statute of limitations barring the claim.

---

[4] Section 6 "outlines universal principles for choice-of-law issues." Calabotta, 460 N.J. Super. at 55–56. These non-exclusive factors are:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.
>
> [Restatement § 6(2) (A.L.I. 1988).]

(2) The forum will apply its own statute of limitations permitting the claim unless:

> (a) maintenance of the claim would serve no substantial interest of the forum; and

> (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.

[Restatement § 142 (A.L.I. 1988).]

Based upon these principles, we examine our state's statute of limitations and whether it conflicts with the CFEPA. Neither the trial court nor the parties referenced the NJLAD's two-year statute of limitations and its difference with the CFEPA. The trial court only stated in its analysis of whether to apply the NJLAD or the CFEPA that "the application of CFEPA over [NJLAD] will result in the dismissal of the claim on statute of limitations ground[s]." Instead, the dispute centers around whether New Jersey's Court Rule 4:2-2, which provides that an action commences upon filing, should be superimposed onto the interpretation of the word "brought" from the CFEPA's statute of limitations.

Comparing the NJLAD's statute of limitation to the CFEPA's, it is clear that had Redmond brought his CFEPA claims in Connecticut, the claims would have been deemed untimely, as he served defendants 132 days later, outside the ninety-day window. See Conn. Gen. Stat. § 46a-101(e); Sokolovsky, 277 A.3d

at 149. Therefore, there is a clear conflict between the NJLAD's two-year statute of limitation and the CFEPA's ninety-day window.

Considering our conclusion that Redmond's alleged injuries lack a sufficient nexus to New Jersey to maintain a NJLAD claim, its associated statute of limitations would also fail a conflicts analysis. Indeed, application of section 142 of the Restatement confirms this. As explained above, section 142 states that a forum will apply another state's statute of limitation if "(a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence." Restatement § 6(2) (A.L.I. 1988). A forum cannot have a "substantial interest" in an NJLAD claim already deemed to lack a sufficient nexus to New Jersey. Connecticut is significantly related to the parties and the alleged discriminatory conduct occurred in Connecticut. Redmond worked exclusively for BDO's Connecticut office, all the alleged incidents of discrimination took place in the Connecticut office; Moeller worked in the Connecticut office; and the altercation with the other employee, resulting in the alleged discrimination, occurred in Connecticut. As such Connecticut's statute of limitation applies.

The comment to section 142 of the Restatement provides that the "law selected by the application of [section 142] . . . also determines all matters

involving the application of the statute of limitations." Restatement § 142 cmt. a (A.L.I. 1988).  As the trial court noted, Sokolovsky clearly states that under Connecticut law, an action commences when "it is served upon the defendant." 277 A.3d at 149 (internal quotation marks and citation omitted).  Thus, Redmond's CFEPA claims are untimely as he served defendants well after the ninety-day window.  The trial court did not err in dismissing Redmond's CFEPA claims as untimely.

### C. Common Law Claims

In his reply merits brief, Redmond argues the trial court erred in dismissing his common law wrongful discharge claims on the grounds that they are preempted by NJLAD.  He contends once the court dismissed his statutory claims, his common law claims were viable as there "no longer remained any duplicative claim for relief."  Redmond does not refer to the CFEPA.  Thus, he is waiving any claim that his Connecticut common law claims should be reinstated.

Because Redmond's common law claims were only raised in his reply brief, defendants did not have the opportunity to address them.  Nonetheless, defendants argued in their opposition brief that because Redmond failed to challenge the trial court's ruling on his common law claims, he abandoned them and he could not "resurrect[] [them] in his reply brief."  Redmond argued in his

reply brief that he has not abandoned them, and if they are abandoned, he asks this court to "relax the rule of abandonment, pursuant to [Rule] 1:1-2."

Generally, "[r]aising an issue for the first time in a reply brief is improper," and we do not consider it.  Borough of Berlin v. Remington & Vernick Eng'rs, 337 N.J. Super. 590, 596 (App. Div. 2001) (citation omitted). When "the issue has not been considered by the [trial court] nor properly addressed by the parties in this appeal; we decline to decide the case on this basis and take no position on the issue's merits." Ibid.  However, here, the trial court addressed the issue.

Although the trial court correctly determined that the NJLAD can "subsume" common law wrongful discharge claims covered by the NJLAD, there is no blanket dismissal of the common law claims upon dismissal of the NJLAD claims.  Because the merits of Redmond's New Jersey common law claims against BDO and Moeller were not decided by the trial court, Redmond should be allowed to prosecute them.  Thus, a remand is appropriate to allow him to do so.

To the extent we have not addressed any of the parties' arguments, it is because they lack sufficient merit to be discussed in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M. C. Hanley

Clerk of the Appellate Division